IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY MIRANDA, | ) | |
| | ) | |
| Plaintiff, | ) | 06 C 3079 |
| | ) | |
| v. | ) | Judge Castillo |
| | ) | |
| UNIVERSAL FINANCIAL GROUP, INC., | ) | Magistrate Judge Cole |
| AEGIS MORTGAGE CORPORATION, | ) | |
| NORWEST MORTGAGE, INC., | ) | |
| doing business as | ) | |
| AMERICA'S SERVICING COMPANY, | ) | |
| and DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO AEGIS
MORTGAGE CORPORATION'S MOTION TO DISMISS**

**I.   NATURE OF THE CASE**

Plaintiff Holly Miranda's Complaint seeks recission of two mortgage loans and statutory damages for violations of the Truth in Lending Act , 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.  Specifically, Plaintiff alleges that Universal Financial Group, Inc.'s closing agent required Plaintiff to pay $2,500 of the proceeds from the loans to a mortgage broker as a commission.  Plaintiff alleges that the $2,500 constituted an undisclosed finance charge under the Truth in Lending Act.

**II.   MOTION TO DISMISS STANDARDS**

A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiffs can prove no set of facts in support of his [sic] claim which would entitle him [sic] to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The Court must accept all well-pleaded allegations of the complaint as true, and any ambiguities or doubts concerning sufficiency of the

claim must be resolved in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992).

The standard used in determining whether to grant a motion to dismiss for failure to state a claim is not what facts have or have not been alleged, but whether a plaintiff can submit proof to support the claim. When a federal court reviews the sufficiency of a complaint before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one: the issue is not whether a plaintiff will ultimately prevail but, again, simply whether the claimant is entitled to offer evidence to support the claims. Scheuer, 416 U.S. at 236.

Finally, a plaintiff is entitled to show the proof intended to be submitted. Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992); see Pegram v. Herdrich, 530 U.S. 211, 230 n. 10 (2000). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion as articulated in . . . Conley . . ." Cushing v. City of Chicago, 3 F.3d 1156, 1160 (7th Cir. 1993). Defendants are not entitled to prevail, without converting the motion into one for summary judgment, and giving plaintiffs adequate opportunity for discovery. Deckard v. General Motors Corp., 307 F.3d 556, 560 (7th Cir. 2002).

### III. STATEMENT OF FACTS

Prior to November 5, 2005, plaintiff applied for a mortgage loan with Universal Financial Group, Inc. (Compl. ¶ 10). Plaintiff needed and used the loan proceeds for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes. Plaintiff needed $210,000 to refinance a prior mortgage with Wells Fargo, $15,000 for a vehicle, and $20,000 for personal expenses. (Compl. ¶ 11). Universal Financial Group, Inc., instead of making one loan, decided to document the transaction as two loans, one for $224,000 and one for $39,000. (Compl. ¶ 12). The loans were closed on November 5, 2005. (Compl. ¶ 13). Plaintiff was initially directed to make payments to Aegis Mortgage Corporation, which purchased the loans prior to closing. (Compl. ¶ 22). Plaintiff has most recently been directed to send

payments to Norwest Mortgage, Inc., d/b/a America's Servicing Company. (Compl. ¶ 22). Aegis and Norwest each claimed an interest in plaintiffs' loans, including the right to receive payments thereunder and are alleged to be necessary parties. (Compl. ¶ 23). Aegis owned and Norwest owns plaintiffs' loans. (Compl. ¶ 24).

## IV.   THE TRUTH IN LENDING ACT

TILA was enacted for the purpose of requiring every creditor extending credit to consumers in the United States to compute and state the cost of that credit in a precise, uniform manner, thereby enabling consumers to compare the cost of credit from various lenders by simply comparing a few numbers. Congress "decided to effectively adopt a new national loan vocabulary that means the same in every contract in every state." Mason v. General Finance Corp., 542 F.2d 1226, 1233 (4th Cir. 1976). "The legislative history [of TILA] makes crystal clear that lack of uniformity in the disclosure of the cost of credit was one of the major evils to be remedied by the Act." Id. at 1231.

TILA and Regulation Z accordingly require disclosure of several key credit terms, computed in the precise manner prescribed by the Regulation and using precise terminology. A critical term to disposition of this case is the "finance charge." The "finance charge" is "the dollar amount the credit will cost you [the consumer]." 12 C.F.R. § 226.18(d). Each of these items must be calculated in the precise manner prescribed by Regulation Z.

The "finance charge" is particularly important because it informs the consumer of the cost of credit. The primary purpose for enacting TILA was to make sure that the true cost of credit would be conveyed through standardized disclosures that would eliminate hidden charges and allow consumers to engage in comparison shopping. Mourning v. Family Publications Serv., Inc., 411 U.S. 356, 364-65, 377 (1973). See 15 U.S.C. §1601(a).

In order to permit consumers to compare credit terms by simply comparing a few key numbers, "strict compliance with the required disclosures and terminology is required." Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407, 416-17 (7th Cir. 1980). Subject to the

tolerances prescribed in TILA and Regulation Z, all disclosure items must be accurate. Mirabal v. General Motors Acceptance Corp., 576 F.2d 729, 734 (7th Cir. 1978). "Any exclusions from the finance charges should be narrowly construed" in order to protect consumers from underdisclosure of the cost of credit. Equity Plus Consumer Fin. & Mortgage Co. v. Howes, 861 P.2d 214, 217 (1993), citing Buford v. American Fin. Co., 333 F. Supp. 1243, 1247 (N.D. Ga. 1971)(notary fees). "It is well-established that only those charges specifically exempted from inclusion in the finance charge by statute or regulation may be excluded from it." Celona v. Equitable Nat'l Bank (In re Celona), 90 B.R. 104, 112 (Bankr. E.D. Pa. 1988), aff'd, 98 B.R. 705 (E.D. Pa. 1989). Consistent with the policy of construing TILA in favor of borrowers, Bizier v. Globe Fin. Servs. Inc., 654 F.2d 1, 3 (1st Cir. 1981), doubtful cases should be resolved in favor of the consumer by declining to apply the exclusion.

Homeowners are entitled to special protection under TILA. If a transaction is secured by one's home, and was not entered into for purposes of the initial acquisition or construction of that home, it is subject to the right to cancel provided by 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.

Additionally, the Federal Reserve Board has been provided with authority to elaborate and expand the legal framework governing commerce in credit. Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559-90 (1980). Pursuant to TILA, the Federal Reserve Board has implemented governing regulations, known as Regulation Z. Id. See also Hill v. GFC Loan Co., 99 2453, 2000 U.S. Dist. LEXIS 4345 (N.D. Ill. Feb. 15, 2000).

## V.   PLAINTIFF IS ENTITLED TO RESCIND THE LOANS OWNED BY ANY ASSIGNEE

Section 1640(a) provides that "any creditor who fails to comply with any requirement imposed under [the TILA], including any requirement under section 1635 of this title," is liable for actual damages, statutory damages, and attorney's fees. 15 U.S.C. § 1640(a) (emphasis added). Additionally, Section 1641(c) specifically provides that a customer has the right to rescind against "any assignee of the obligation." 15 U.S.C. ¶ 1641(c).

Aegis claims that because it is not the <u>current</u> assignee of the loan, it does not have the power to rescind them. However, as stated above, TILA's rescission remedy is not limited to the current assignee of the loan, but <u>any</u> assignee within the chain of title. Should Plaintiff prevail, she is entitled to recover the payments that she made to Aegis, no matter how brief its ownership was.

Further, while Aegis <u>claims</u> it does not have the power to rescind the loans, there is no basis, on the pleadings, for this assumption and no evidence has been offered. Often, loans are sold with provisions for their repurchase if disputes of this nature arise. At this early stage, the Court cannot simply assume that Aegis has no power to rescind the loan just because Aegis says so.

In a similar matter, a district court held that an intermediate assignee may be held liable for restitution despite that fact that the assignee was not the current owner of the loan. <u>Myers v. CitiCorp Mortgage, Inc.</u>, 878 F. Supp. 1553, 1558-59 (Dist. Al. 1995). Similarly here, should Plaintiff prevail on her recission claim, she is entitled to recoup the payments made to Aegis.[1]

                                    Respectfully submitted,

                                    <u>/s/ Jeremy P. Monteiro</u>
                                    Jeremy P. Monteiro

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Jeremy P. Monteiro
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

---

[1] Plaintiff concedes that she may not recover statutory damages for the alleged TILA violation unless the violation is apparent on the face of the documents. Plaintiff has not alleged such a violation in this instance.

## **CERTIFICATE OF SERVICE**

I, Jeremy P. Monteiro, hereby certify that on September 8, 2006, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO AEGIS MORTGAGE CORPORATION'S MOTION TO DISMISS** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John Joseph Lydon - lydonj@gsgolaw.com

Stephen Ryan Meinertzhagen - smeinertzhagen@burkelaw.com, jpowell@burkelaw.com, kmcavoy@burkelaw.com

Robert Jerald Emanuel - remanuel@burkelaw.com, jpowell@burkelaw.com, sbecchino@burkelaw.com

Nazia J. Hasan - nhasan@gsgolaw.com

                                              /s/ Jeremy P. Monteiro
                                              Jeremy P. Monteiro